AMIN WASSERMAN GURNANI, LLP
William P. Cole, Bar No. 186772
Matthew R. Orr, Bar No. 211097
Cole Kroshus, Bar No. 345790
515 South Flower St., 18th Floor
Los Angeles, CA  90071
Tel:    (213) 933-2330
Fax:    (312) 884-7352
wcole@awglaw.com
morr@awglaw.com
ckroshus@awglaw.com

Attorneys for Defendant Walgreen Co.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON FERGUSON, on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br><br>v.<br><br>WALGREEN CO.,<br><br>       Defendant. | Case No.:  4:25-cv-08299-JST<br><br>**DEFENDANT WALGREEN CO.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br><br>Date: January 29, 2026<br>Time: 2:00 p.m.<br>Courtroom 6 |

## NOTICE OF MOTION

TO THE CLERK OF COURT AND ALL PARTIES OF RECORD:

 PLEASE TAKE NOTICE THAT on January 29, 2026, at 2 p.m. or as soon thereafter as may be heard by the Honorable Jon S. Tigar, Courtroom 6 – 2nd Floor, 1301 Clay Street, Oakland, California, Defendant Walgreen Co. will, and hereby does, move the Court for an order dismissing the Complaint, and each claim asserted therein, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). This motion is made on the ground that Plaintiff fails to state any claim for relief, his claims are preempted by federal law, and he lacks standing to pursue injunctive relief. The grounds for the motion are more fully set forth in the accompanying Memorandum of Points and Authorities.

 This motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Andrea Collaro, the pleadings and files in this action, and such other matters as may be presented at or before any hearing on this motion.

Dated:  November 24, 2025    **AMIN WASSERMAN GURNANI, LLP**

         ***/s/ William P. Cole***
         William P. Cole

         *Attorneys for Defendant*

DEFENDANT WALGREEN CO.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

# **TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................................................ 1

II.  BACKGROUND ........................................................................................................ 2

    A.  The Product's Packaging. ................................................................................ 2

    B.  Alleged Online Advertising. ........................................................................... 4

    C.  Ferguson's Alleged Purchases. ....................................................................... 5

III.  LEGAL STANDARDS ............................................................................................. 5

IV.  ARGUMENT ............................................................................................................ 6

    A.  All Claims Predicated on the "Unapproved New Drug" Theory are Preempted by Federal Law. ......................................................................................................... 7

    B.  Besides Being Impliedly Preempted, Ferguson Fails to Plausibly Allege that the Product Makes Any Disease Claims. ............................................................ 10

    C.  Ferguson Fails to Plausibly Allege that the Product's Advertising Claims are False or Misleading. .................................................................................................. 13

    D.  Ferguson Fails to State any Claim for Equitable Restitution Because He Fails to Plead Facts Establishing His Legal Remedies Are Inadequate. ................................. 16

    E.  Ferguson Lacks Standing to Pursue Injunctive Relief. ................................... 18

V.  CONCLUSION ......................................................................................................... 19

TABLE OF CONTENTS

# TABLE OF AUTHORITIES

**State Cases**

*Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*, 107 Cal.App.4th
   1336 (2003) .................................................................................................. 10, 14

**Federal Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).................................................... 5, 6, 15, 17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)............................................... 6

*Bubak v. Golo, LLC*, No. 1:21-cv-00492-DAD-AC, 2024 WL 86315
   (E.D. Cal. Jan. 5, 2024) .......................................................................... 8, 9, 13

*Bubak v. Golo, LLC*, No. 24-492, 2025 WL 2860044, at *1 (9th Cir. Feb. 7, 2025)............................ 8

*Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001) ........................... 7, 9

*Caldwell v. Nordic Naturals, Inc.*, 709 F. Supp. 3d 889 (N.D. Cal. 2024) ........................... 19

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983).................................................... 18

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013)................................................ 18

*Dachauer v. NBTY, Inc.*, 913 F.3d 844 (9th Cir. 2019)......................... 10, 11, 12, 14, 15

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006) .......................................... 18

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018) ............................. 18, 19

*DiCroce v. McNeil Nutritionals, LLC*, 82 F.4th 35 (1st Cir. 2023) ............................. 8, 9

*Ferrari v. Vitamin Shoppe Indus. LLC*, 70 F.4th 64 (1st Cir. 2023) ............................. 11

*Freund v. HP, Inc.*, No.22-cv-03794-BLF, 2023 WL 187506
   (N.D. Cal. Jan. 13, 2023).......................................................................... 17

*Gonzalez v. Chattem, Inc.*, No. 23-cv-00102-HSG, 2023 WL 8101923
   (N.D. Cal. Nov. 21, 2023) ........................................................................ 17

*Gradney v. Polar Beverages*, No. 25-cv-02149, 2025 WL 2105831
   (N.D. Cal. July 28, 2025) ........................................................................ 17

*Greenberg v. Target Corp.*, 985 F.3d 650 (9th Cir. 2021) ..................................... 11

*Guaranty Trust Co. of New York v. York*, 326 U.S. 99 (1945)................................. 17

*In re GlenFed, Inc. Sec. Litig,*, 42 F.3d 1541 (9th Cir. 1994) .................................................. 6

*Jackson v. General Mills, Inc.*, No. 18cv2634-LAB (BGS), 2020 WL 5106652

    (S.D. Cal. Aug. 28, 2020) ...................................................................................................... 19

*Jones v. ConAgra Foods, Inc.*, 912 F.Supp.2d 889 (N.D. Cal. 2012) .................................... 6

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ............................................. 6, 16

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) ..................................... 6

*Kroessler v. CVS Health Corporation*, 977 F.3d 803 (9th Cir. 2022) ........................... 11, 12

*Kwan v. SanMedica Int'l*, 854 F.3d 1088 (9th Cir. 2017) ............................................. 14, 15

*Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018 (9th Cir. 2003) ......................... 18

*Liou v. Organifi, LLC*, 491 F.Supp.3d 740 (S.D. Cal. 2020) ................................................ 14

*Loh v. Future Motion, Inc.*, No. 5:21-cv-06088-EJD, 2022 WL 2668380

    (N.D. Cal. July 11, 2022) ...................................................................................................... 16

*Magpayo v. Walmart Inc.*, No. 24-cv-01350-WHO, 2025 WL 754065

    (N.D. Cal. Mar. 10, 2025) ..................................................................................................... 16

*Nexus Pharmaceuticals, Inc. v. Central Admixture Pharmacy Services, Inc.*, 48 F.4th

    1040 (9th Cir. 2022) ........................................................................................................ 7, 8, 9

*O'Shea v. Littleton*, 414 U.S. 488 (1974) ............................................................................. 17

*Perez v. Nidek Co., Ltd.*, 711 F.3d 1109 (9th Cir. 2013) ................................................. 7, 10

*Ringler v. J.M. Smucker Company*, 783 F. Supp.3d 1229 (C.D. Cal. 2025) ......................... 18

*Sanford v. MemberWorks, Inc.*, 625 F.3d 550 (9th Cir. 2010) ................................................ 6

*Seegert v. Rexall Sundown, Inc.*, No. 20-55486, 2022 WL 301553 (9th Cir. 2022) ............ 11

*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) ....................................... 17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S. Ct. 2499 (2007) ............ 6

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ............................................ 6

*Viggiano v. Hansen Natural Corp.*, 944 F.Supp.2d 877 (C.D. Cal. 2013) ............................. 6

**Statutes**

21 C.F.R. § 101 ...................................................................................................................... 10

21 C.F.R. § 310 ................................................................................................................. 7, 12

TABLE OF AUTHORITIES

21 U.S.C. § 321 ................................................................................................... 7

21 U.S.C. § 337 ................................................................................................... 7

65 Fed. Reg. 1000 ............................................................................................. 11

65 Fed. Reg. at 1030 ......................................................................................... 11

65 Fed. Reg. at 1031 ......................................................................................... 12

Cal. Bus. & Prof. Code § 1750 ........................................................................... 5

Cal. Bus. & Prof. Code § 17200 ......................................................................... 5

Cal. Bus. & Prof. Code § 17500 ......................................................................... 5

Fed. R. Civ. P. 8 ................................................................................................. 5

Fed. R. Civ. P.  9 ........................................................................................... 6, 16

Fed. R. Civ. P. 12 ............................................................................................... 6

TABLE OF AUTHORITIES

**STATEMENT OF ISSUES TO BE DECIDED PER CIVIL L.R. 7-4(A)(3)**

1.    ***Preemption***. Whether federal law preempts Plaintiff's claims predicated on allegations that Walgreen violated the Food, Drug and Cosmetic Act ("FDCA") by allegedly marketing Walgreens Men's Testosterone Complex as an unapproved new drug.

2.    ***Failure to Allege Falsity***. Whether Plaintiff has failed to allege factual content plausibly establishing that the Walgreens Men's Testosterone Complex does not provide its advertised benefits.

3.    ***Equitable Restitution***. Whether Plaintiff has stated any claims for equitable restitution where the Complaint does not adequately allege that his legal remedies are inadequate.

4.    ***Standing (Injunctive Relief)***. Whether Plaintiff adequately alleges standing to pursue injunctive relief.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Plaintiff Jason Ferguson challenges the advertising of Walgreens Men's Testosterone Complex dietary supplement (the "Product"). He alleges that Walgreen makes "disease" claims for the Product that supposedly render it an "unapproved new drug." As a seeming afterthought, he also makes the conclusory allegation that the Product is not "safe and effective." His claims fail as a matter of law.

First, the "unapproved new drug" theory is preempted. The Ninth Circuit has held that private parties cannot bring state law claims predicated on allegations that a defendant marketed or sold unapproved drugs in violation of the FDCA and, by adoption, California's Sherman Law. And even apart from preemption, Ferguson fails to identify any advertising that makes any disease claim whatsoever. The Product's packaging makes prototypical, acceptable structure/function claims.

Second, Ferguson fails to allege factual content plausibly showing that the Product's structure/function claims are false or misleading, let alone that the Product is not "safe." Ferguson makes a few generalized allegations about the testosterone-boosting industry writ large but none about the Product itself. His allegations meet neither the plausibility nor particularity requirements applicable to his claims.

//

//

1       Third, Plaintiff does not adequately allege that his available legal remedies are inadequate.

2  Therefore, he fails to state any claim for equitable restitution. He also fails to allege Article III standing

3  to pursue injunctive relief.

4       The Court should dismiss the Complaint in its entirety.

5  **II.     BACKGROUND**

6       **A.     The Product's Packaging.**

7       Walgreen markets and sells the Product, which, as stated in the Supplement Facts panel, includes

8  vitamin B6, magnesium, zinc, and Fenugreek extract (Testofen®). (Dkt. 1, Compl., ¶ 4.) The Complaint

9  includes the following images of the Product:



MEMORANDUM OF POINTS AND AUTHORITIES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17 (*Id.* ¶ 42; *see also* Decl. of Andrea Collaro ("Collaro Decl."), Ex. 1 (image of a complete carton).)[1]

18      As can be seen, the front of the carton and the bottle label prominently state that the Product is a

19 "DIETARY SUPPLEMENT." (Compl. ¶ 42.) In the "Suggested use" section, the carton again states the

20 Product is "a dietary supplement." (*Id.*) The front of the carton includes the express statement that "[T]HIS

21 PRODUCT IS NOT INTENDED TO DIAGNOSE, TREAT, CURE, OR PREVENT ANY DISEASE"

22 (the "DSHEA disclaimer"). (*Id.*) The DSHEA disclaimer is repeated on the back panel, as well as on the

23 bottle's label, and every structure/function claim made on the carton and label is directly tied to the

24 DSHEA disclaimers by an asterisk (*). (*See* Collaro Decl., Ex. 1.) Despite all this, Ferguson alleges the

25 Product is an "unapproved new drug" because Walgreen supposedly markets it with advertising claims

26 that it "can cure, mitigate, or treat disease, such as low testosterone, hormonal imbalance, and sexual

27 disfunction." (*Id.* ¶ 38.) But neither the Product's carton nor its label makes any reference to "low"

28      [1] The full carton is properly considered by the Court under the doctrine of incorporation by reference, as explained in Section III, *infra*.

testosterone, "hormonal imbalance", or "sexual dysfunction." (*See Id.* ¶ 42; Collaro Decl., Ex. 1.) The Complaint does not identify any advertising that makes those statements.

Ferguson alleges that "Defendant claims that Testosterone Complex 'boost[s] free testosterone levels,' 'promotes an increase in free testosterone levels,' increases 'lean muscle mass, strength, & endurance,' and improves 'sexual function in men.' Walgreens further claims that the product 'has been clinically studied' and is 'Walgreens pharmacist approved.'" (*Id.* ¶ 4.) But, again, Ferguson's allegations are contradicted by the advertising itself in several ways, and he also conveniently omits the asterisks and other reference marks tied to the advertising claims.

First, neither the carton nor the label states that the Product "increases" lean muscle mass, strength and endurance. (*Id.* ¶ 42.) Instead, it states "*Supports* . . . lean muscle mass, strength & endurance††*". (*Id.*, emphasis added.) The asterisk links to the DSHEA disclaimer and the †† reference mark links to the following language: "††As part of a 12-week regular strength and exercise program." (Collaro Decl., Ex. 1.)

Second, neither the carton nor the label states that the Product "improves" sexual function in men. (Compl. ¶ 42; Collaro Decl., Ex. 1.) Instead, the carton and label state that one of the Product's ingredients (Testofen®) "has been clinically studied for its ability to . . . *Support* sexual function in men*‡". (*Id.*, emphasis added.) The asterisk links to the DSHEA disclaimer, while the ‡ reference mark ties to the statement "‡Related to a normal decrease associated with aging." (Collaro Decl., Ex. 1.)

Third, the packaging states, "Walgreens pharmacist recommended", not "Walgreens pharmacist approved." (Compl. ¶ 42; Collaro Decl., Ex. 1.) The Complaint does not have any factual allegations disputing that the Product is "Walgreens pharmacist recommended."

## B.    Alleged Online Advertising.

Ferguson also makes allegations about the Product's online advertising on Walgreens.com. (*Id.* ¶ 47.) But the online statements identified by him are just a repeat of the same language found on the Product's carton. (*Compare* Compl. ¶ 42 *with* Compl. ¶ 47.) In any event, Ferguson does not allege that he viewed any online advertising before making his purchases.

/ /

/ /

- 4 -

C.    **Ferguson's Alleged Purchases.**

Ferguson alleges that he purchased the Product "at least three times from the Walgreens locations on Market Street in San Francisco and on East Avenue in Chico." (Compl. ¶ 73.) He alleges his most recent purchase was in December 2023. (*Id.*) He alleges that, when purchasing the Product, "he was seeking a safe and effective product which would increase testosterone levels, muscle mass, and libido, and which was sold in compliance with FDA regulations and California law." (*Id.* ¶ 74.) He alleges he "suffered economic injury when he purchased Testosterone Complex because the product was not safe and effective for its intended purpose and was in violation of federal regulations and California law." (*Id.* ¶ 76.) He claims the Product "had a value of $0 because it is both illegal and ineffective." (*Id.* ¶ 78.)

As for the purported "illegality," Ferguson's theory is that the Product's advertising makes disease claims and "aphrodisiac" claims (rather than permissible structure/function claims) that render the Product an unapproved new drug under the FDCA and its implementing regulations. (*Id.* ¶¶ 40-41, 45.) He alleges that because the Product is supposedly an unapproved new drug under the FDCA, it is also misbranded under California's Sherman Food, Drug, and Cosmetic Law (the "Sherman Law"). (*Id.* ¶ 64.)

As for Ferguson's theory the Product is not "safe and effective," the Complaint does not contain *any* factual content to support that conclusory assertion. There are no factual allegations plausibly supporting his conclusory assertion that the Product is unsafe. And there are no factual allegations even attempting to explain how the Product supposedly does not provide its advertised benefits.

Based on these allegations, Ferguson brings the following claims on behalf of himself and a proposed California class: violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq. (First through Third Causes of Action); violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, et seq. (Fourth Cause of Action); and violation of the Consumer Legal Remedies Act ("CLRA"), Cal. Bus. & Prof. Code § 1750, et seq.

III.    **LEGAL STANDARDS**

The court must dismiss a claim if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 8. Rule 8 demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). The complaint must state sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility only if the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678.

The court does not accept as true "legal conclusions," "labels and conclusions" or a "formulaic recitation of the elements of a cause of action[.]" *Iqbal*, 556 U.S. at 678. A "naked assertion" devoid of "further factual enhancement" does not suffice. *Id.* (citation omitted). The plaintiff must allege "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint alleging facts "merely consistent with the defendant's liability stops short of the line between possibility and plausibility" of entitlement to relief. *Id.*

Furthermore, claims that sound in fraud must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010). This includes UCL, FAL, and CLRA claims. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Among other things, Rule 9(b) requires that the plaintiff "set forth what is false or misleading about a statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *In re GlenFed, Inc. Sec. Litig,*, 42 F.3d 1541, 1548 (9th Cir. 1994)).

When ruling on a Rule 12 motion, a court may look beyond the pleadings at "documents incorporated by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499 (2007); *accord Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (internal quotations and citation omitted). This includes the complete product labeling. *See, e.g, Jones v. ConAgra Foods, Inc.*, 912 F.Supp.2d 889, 903 n.7 (N.D. Cal. 2012) (product label properly considered "because it is referenced in the complaint"); *Viggiano v. Hansen Natural Corp.*, 944 F.Supp.2d 877, 882-883 (C.D. Cal. 2013). The incorporation-by-reference doctrine "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken – or doom – their claims." *Khoja*, 899 F.3d at 1002.

## IV.    ARGUMENT

Ferguson alleges two theories of liability: (1) that the Product is an unapproved drug under the FDCA and is therefore misbranded under the FDCA and the Sherman Law; and (2) that the challenged advertising claims are false and misleading because the Product is not safe and effective (i.e., "fails to

deliver the advertised benefits"). (Compl. ¶¶ 48-49.) His UCL, FAL, and CLRA claims are all predicated on one or both of these theories. Walgreen addresses each in turn.

### A.    All Claims Predicated on the "Unapproved New Drug" Theory are Preempted by Federal Law.

Ferguson alleges that the Product's advertising claims render it "a 'drug' within the meaning of 21 U.S.C. § 321(g) and an aphrodisiac drug within the meaning of 21 C.F.R. § 310.528." (Compl. ¶ 40.) Therefore, he alleges that Walgreen was required to obtain FDA approval to market the Product as a drug but did not do so. (*Id.* ¶ 41.) He alleges that, by extension, Walgreen violated the Sherman Law because it "adopted" the federal provisions. (*Id.* ¶ 64.) He asserts these alleged regulatory violations as a basis for his UCL "unlawful"-prong claim. (*Id.*) He also predicates his deception-based claims under the UCL, FAL, and CLRA on the "unapproved new drug" theory by alleging that he purchased the Product "with the natural assumption" that it "would be sold in compliance with FDA regulations and California law" and he "would not have purchased" it had he known it "was sold in violation of federal regulations and California law." (*Id.* ¶¶ 75, 77.) However, under *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 353 (2001), and *Nexus Pharmaceuticals, Inc. v. Central Admixture Pharmacy Services, Inc.*, 48 F.4th 1040, 1050 (9th Cir. 2022), the alleged FDA regulatory violations cannot serve as a predicate for any of his causes of action. Any claims predicated on the alleged regulatory violations are preempted.

In this context, preemption rests on two principles: (1) the FDCA preempts any state's drug regulations or food labeling requirements that are not identical to FDCA requirements (21 U.S.C. §§ 343-1, 360k); and (2) a consumer has no ability to privately enforce the FDCA. (21 U.S.C. § 337(a)-(b)). These two principles create only a "narrow gap" through which a private party's state-law claim must fit to escape preemption by the FDCA: The plaintiff must be suing for conduct that *violates* the FDCA (or else his claim is expressly preempted), but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman*). *Perez v. Nidek Co., Ltd.*, 711 F.3d 1109, 1120 (9th Cir. 2013).

The Ninth Circuit has held that private parties cannot bring state law claims predicated on allegations that the defendant marketed or sold unapproved drugs in violation of the FDCA and, by extension, the Sherman Act. *Nexus Pharmaceuticals, Inc. v. Central Admixture Pharmacy Services, Inc.*,

- 7 -

48 F.4th 1040, 1050-51 (9th Cir. 2022); *Bubak v. Golo, LLC*, No. 24-492, 2025 WL 2860044, at *1 (9th Cir. Feb. 7, 2025). In *Nexus*, like here, the plaintiff alleged that the defendant sold drugs without the FDA's approval, thereby violating the Sherman Law and, by extension, the UCL. *See* 48 F.4th at 1043; *see also Bubak*, 2025 WL 2860044, at *1 (explaining that, in *Nexus*, "the UCL claim in that case rested on alleged violations of the Sherman Law"). The Ninth Circuit held the plaintiff's claims were preempted because they were "based on state laws that incorporate federal law, rather than on traditional tort law." *Nexus*, 48 F.4th at 1048. "[A] necessary element of [the plaintiff's] claim is the alleged violation of the FDCA." *Id.* "The purported state law violation is of a law that says in substance 'comply with the FDCA,' not a traditional common law tort." *Id.* at 1050. Therefore, "[t]he prohibition of private enforcement applies squarely, as does 'implied preemption.'" *Id.* at 1050-51; *accord DiCroce v. McNeil Nutritionals, LLC*, 82 F.4th 35, 42 (1st Cir. 2023) ("Because we conclude that violation of the FDCA '*is* a critical element in [DiCroce's] case,' we hold that her claims are impliedly preempted.") (emphasis and alteration in original, citation omitted).

In *Nexus*, the court explained that the Ninth Circuit has "been protective of the FDA's statutory monopoly on enforcement authority." *Nexus*, 498 F.4th at 1048. Private causes of action predicated on violation of a state statute "that says in substance 'comply with the FDCA'" are preempted because they "may indeed 'stand as an obstacle' to FDA's enforcement discretion by enabling what the FDA regards as over-enforcement." *Id.* at 1048, 1050.

Similarly, in *Bubak v. Golo, LLC*, No. 1:21-cv-00492-DAD-AC, 2024 WL 86315 (E.D. Cal. Jan. 5, 2024), the plaintiff—like Ferguson here—filed a putative class action complaint predicating UCL, FAL, and CLRA claims on the theory that the defendant made drug claims about its dietary supplement product without premarket approval under the FDCA. *Id.* at *1. The district court held that theory could not support any UCL, FAL, or CLRA claim because it was preempted under the Ninth Circuit's binding precedent in *Nexus*. *Id.* at *3-4. The plaintiff appealed, and the Ninth Circuit recently affirmed the dismissal. *Bubak,* 2025 WL 2860044 (9th Cir. Feb. 7, 2025). The panel held that *Nexus* was controlling and foreclosed the plaintiff's claims. *Id.* at *1. The court explained: "Bubak's claims face the same problem [as the claims in *Nexus*]. She asserts that she may sue under the UCL because the FDCA is 'incorporated into' the Sherman Law and Golo violated § 403(r) of the FDCA by representing that its

1    dietary supplement can mitigate or prevent a disease." *Id.* Bubak's UCL claim "therefore necessarily

2    requires litigating 'the alleged underlying FDCA violation,' *Nexus*, 48 F.4th at 1049, and the 'plain text

3    of the FDCA leaves that determination in the first instance to the FDA's balancing of risks and concerns

4    in its enforcement process.' *id.* at 1050." *Bubak*, 2025 WL 2860044, at *1.

5       Similarly, in *DiCroce v. McNeil Nutritionals, LLC*, 82 F.4th 35 (1st Cir. 2023), the plaintiff

6    alleged that, although marketed as a dietary supplement, Lactaid is actually an unapproved new drug

7    because the defendants allegedly advertised it as a treatment for lactose intolerance. *Id.* at 38. The

8    plaintiff alleged that because Lactaid is a drug under relevant federal laws, "it is misleading, and thus

9    violative of state law, for [defendants] to misbrand Lactaid as a dietary supplement, and to make

10    statements on Lactaid's label disclaiming [FDA] approval, thereby implying that FDA approval is not

11    required[.]" *Id.* The court affirmed the district court's dismissal of the complaint. The court observed

12    that the plaintiff's "legal action hinges on her assumption that Lactaid's labels violate the FDCA's

13    labeling requirements and are therefore misleading to consumers." *Id.* at 40. "Because we conclude that

14    violation of the FDCA '*is* a critical element in [DiCroce's] case,' we hold that her claims are impliedly

15    preempted." *Id.* at 42 (quoting *Buckman*, 531 U.S. at 353).

16       Here, just as in *Nexus*, *Bubak*, and *DiCroce*, Ferguson cannot base any state-law claim on the

17    theory that, although labeled as a dietary supplement, the Product is advertised in a way that renders it

18    an unapproved drug under the FDCA. But that is exactly what Ferguson tries to do. (*See* Compl. ¶ 40-

19    1, 45.) He attempts to predicate a UCL "unlawful"-prong claim on the unapproved drug theory, alleging

20    that the purported FDCA violations are, by adoption, also violations of the Sherman Law and, therefore,

21    the UCL (*Id.* ¶¶ 64 – 65.) As explained in *Nexus* and *Bubak*, any such claim is preempted.

22       As for his deception-based UCL, FAL, and CLRA claims, Ferguson's claims are also preempted

23    to the extent predicated on his allegations that he was misled because he believed the Product was "sold

24    in compliance with FDA regulations and California law" and would not have purchased it if he had

25    known otherwise. (*Id.* ¶¶ 75, 77.) That theory would also require the court to determine if the Product

26    is, in fact, an unapproved new drug marketed or sold in violation of the FDCA regulations (and, by

27    extension, the Sherman Law). The claims therefore encroach on "the FDA's statutory monopoly on

28    enforcement authority." *Nexus*, 48 F.4th at 1048. The Court must dismiss all claims—regardless of

whether they are couched in terms of unlawfulness, unfairness, or deception—to the extent predicated on the underlying theory that the Product is an unapproved new drug.

**B.** **Besides Being Impliedly Preempted, Ferguson Fails to Plausibly Allege that the Product Makes Any Disease Claims.**

While foreclosed by implied preempted, Ferguson's "unapproved new drug" theory fails for another reason: He fails to plausibly allege that Walgreen advertises the Product with any disease claims that would render it a "drug." Thus, his claims are also expressly preempted because he fails to plausibly allege conduct "that *violates* the FDCA." *Perez*, 711 F.3d at 1120 (emphasis in original, quotation and citation omitted).

For dietary supplements, the FDCA distinguishes between "disease claims" and "structure/function claims" that manufacturers make about their products. *Dachauer v. NBTY, Inc.*, 913 F.3d 844, 846 (9th Cir. 2019). "A structure/function claim 'describes the role of a nutrient or dietary ingredient intended to affect the structure or function in humans' or 'characterizes the documented mechanism by which a nutrient or dietary ingredient acts to maintain such structure or function,' but 'may not claim to diagnose, mitigate, treat, cure, or prevent a specific disease or class of diseases.'" *Id.* (quoting 21 U.S.C. § 343(r)(6)) (emphasis in original). Conversely, a disease claim "claims to diagnose, mitigate, treat, cure, or prevent disease," either explicitly or implicitly, such as by claiming that a product treats a disease's "characteristics signs or symptoms." 21 C.F.R. § 101.93(g)(2); *see Dachauer*, 913 F.3d at 846.

Structure/function claims must meet three requirements: (1) the manufacturer has substantiation that the statement is truthful and not misleading; (2) the statement contains a prominent disclaimer that the Food and Drug Administration ("FDA") has not evaluated the statement and that the product "is not intended to diagnose, treat, cure, or prevent any disease"; and (3) the statement itself does not "claim to diagnose, mitigate, treat, cure, or prevent" disease. 21 U.S.C. § 343(r)(6). "Although the FDCA requires manufacturers to have substantiation for their structure/function claims, California law does not allow private plaintiffs to demand substantiation for advertising claims." *Dachauer*, 913 F.3d at 847 (citing *Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*, 107 Cal.App.4th 1336 (2003)).

Statements that a dietary supplement will "support", "help maintain", "promote", or "boost" a

structure or function of the human body—without any reference to preventing, treating, or curing a disease—are permissible structure function claims, not disease claims. *See* 65 Fed. Reg. 1000, 1030 (Jan. 6, 2000) ("FDA agrees that 'boosts stamina, helps increase muscle size, and helps enhance muscle tone' are acceptable structure/function claims, because they do not refer to any disease."). For example, in *Dachauer*, the court held that "support cardiovascular health" and "heart health" are structure/function claims. 913 F.3d at 846, 848. Similarly, in *Kroessler v. CVS Health Corporation*, 977 F.3d 803 (9th Cir. 2022), the court held that label claims such as "support joint comfort" and "supports flexibility" were structure/function claims, not implied disease claims. *Id.* at 806. The court noted the FDA's guidance distinguishing between a claim referring to "joint pain" and a claim "helps support cartilage and joint function," with the latter claim a permissible structure/function claim. *Id.* at 810; *see also Seegert v. Rexall Sundown, Inc.*, No. 20-55486, 2022 WL 301553, at *2 (9th Cir. 2022) ("supports joint comfort" and "helps strengthen joints" were structure/function claims, not implied disease claims, as the label "does not represent that [the product] 'reduces joint pain' or affects any other characteristic symptom of osteoarthritis"); *Ferrari v. Vitamin Shoppe Indus. LLC*, 70 F.4th 64, 68 (1st Cir. 2023) ("supports the immune system" is a structure/function claim); *Greenberg v. Target Corp.*, 985 F.3d 650, (9th Cir. 2021) (referring to "vitamin C boosts immunity" as an example of a structure/function claim).

Here, the Product makes classic structure/function claims. It does not make any reference to any disease or disease condition. Ferguson's claims to the contrary are not only implausible, but frivolous. The front carton states, "Supports . . . A healthy libido*‡ [and] Lean muscle mass, strength & endurance††*". (Compl. ¶ 42; Collaro Decl., Ex. 1.) There is no reference to "treat[ing] low testosterone, hormonal imbalance, or sexual dysfunction" (Compl. ¶ 48), nor any reference to a disease or disease condition. In fact, the asterisks lead directly to the front-of-package DSHEA disclaimer, expressly stating the Product is *not* intended to diagnose, treat, cure, or prevent any disease. (*Id.* ¶ 42; Collaro Decl., Ex. 1.) The ‡ symbol links the "supports healthy libido" claim to the statement, "‡Related to a normal decrease associated with aging." (Collaro Decl., Ex. 1.) The †† symbol ties the "supports lean muscle mass, strength & endurance" claim to "††As part of a 12-week regular strength training and exercise program." (*Id.*) Again, there is no reference to any disease or disease condition. *See* 65 Fed. Reg. at 1030 ("boosts stamina, helps increase muscle size, and helps enhance muscle tone" are acceptable

- 11 -

structure/function claims because they do not refer to any disease). Similarly, the back panel's references to one of the Product's ingredients (Testofen®) having been clinically studied for its ability to "[s]upport" the development of lean muscle mass, strength and endurance, and sexual function in men are prototypical structure/function claims. *See Dachauer*, 913 F.3d at 846, 848 ("support cardiovascular health"); *Kroessler*, 977 F.3d at 806 ("support joint comfort" and "supports flexibility"). The packaging makes no reference to "erectile dysfunction" or "impotence." "Promoting" an increase in free testosterone is also a structure/function claim, not a disease claim. The DSHEA disclaimer appears right below these structure/function claims.

Likewise, Ferguson's conclusory assertion that the Product makes "aphrodisiac" claims is meritless. The packaging never uses the word "aphrodisiac" and never refers to "arousing" or "increasing" sexual desire. Instead, as noted, the structure/function claims merely refer to *supporting* healthy libido related to a normal decrease associated with aging and *supporting* sexual function. And while the Product does not even refer to "arousing" or "increasing" sexual desire, it bears noting that the FDA has determined that, with respect to dietary supplements, "'arouses or increases sexual desire and improves sexual performance' is *an acceptable structure/function claim* because it does not imply treatment of a disease." 65 Fed. Reg. at 1031 (emphasis added). In contrast, the FDA observed that "'[h]elps restore sexual vigor, potency, and performance,' 'improves performance, staying power, and sexual potency,' and 'builds virility and sexual potency' are disease claims because they use the term 'potency,' which implies treatment of impotence, a disease. If, however, these claims made clear that they were intended solely for decreased sexual function associated with aging, they could be acceptable structure/function claims." 65 Fed. Reg. at 1031.

In short, Ferguson's "aphrodisiac" drug claim theory reveals a deep misunderstanding of FDA regulations pertaining to dietary supplements. His reliance on 21 C.F.R. § 310.528 is misplaced. That section concerns OTC drugs, not dietary supplements. In fact, section 310.528 was enacted before the passage of the Dietary Supplement Health and Education Act of 1994, which established a new regulatory framework for dietary supplements. The FDA specifically addressed this distinction, explaining the FDA agrees that some "OTC drug claims may be acceptable structure/function claims" for dietary supplements. 65 Fed. Reg. at 1031. As noted, the FDA gave examples of such acceptable structure/function claims with

respect to sexual desire or performance. *Id.* Here, the Product's advertising stays well within the realm of permissible structure/function claims for a dietary supplement by merely referring to *supporting* healthy libido and *supporting* sexual function (related to a normal decrease associated with aging), and not making any reference to impotency, potency, or erectile dysfunction. There is no question the Product's packaging makes basic structure/function claims, not disease or "aphrodisiac" drug claims.

The Complaint cites a handful of FDA warning letters, but they are red herrings. They concern products that the FDA warned were unapproved drugs (not dietary supplements) either because they did not include a dietary ingredient, they made claims regarding erectile dysfunction or impotence, or they included active pharmaceutical ingredients found in prescription drugs. *See, e.g.,* Compl., Ex. 2, Dkt. 1-1 (FDA warning the products were not dietary supplements because their ingredients (e.g., piracetam and ATD) are not dietary ingredients), Ex. 3 (the products were advertised as treatment for "erectile dysfunction" and "a remedy for impotence"), Ex. 4 (the products included anabolic steroids, not dietary ingredients), Ex. 5 (the product contained sildenafil, the same active pharmaceutical ingredient in Viagra, a prescription drug), Ex. 6 (the product contained tadalafil, the same pharmaceutical ingredient in Cialis, a prescription drug). Ferguson's reliance on those warning letters is befuddling. He does not allege that the Product does not contain dietary ingredients. He does not allege any Product advertising that refers to erectile dysfunction or impotence. He does not allege that the Product contains an active pharmaceutical ingredient found in FDA-approved prescription drugs.

Having failed to plausibly allege an FDCA violation, Ferguson's state-law claims attempt to impose requirements that are "not identical to" FDCA requirements. *Bubak*, 2025 WL 2860044, at *1 (quoting 21 U.S.C. § 343-1). Thus, he fails to state any UCL, FAL, or CLRA claim predicated on the theory that the Product is an "unapproved new drug."

**C.**    **Ferguson Fails to Plausibly Allege that the Product's Advertising Claims are False or Misleading.**

Apart from Ferguson's "unapproved new drug" theory, the Complaint includes only boilerplate, formulaic assertions that the Product is not "safe and effective for its intended purposes[.]" (Compl. ¶¶ 76 – 77.) Because Ferguson pleads no factual content plausibly supporting that formulaic recitation, he states no claims

"California law does not allow private plaintiffs to demand substantiation for advertising claims." *Dachauer*, 913 F.3d at 847 (citing *King Bio*, 107 Cal.App.4th 1336). Instead, a private plaintiff bears the burden of proving "that the challenged statement is false or misleading." *Id.* at 847. "Because California law does not provide a private cause of action for claims that advertising lacks substantiation, the failure to allege specific facts pointing to actual falsehood constitutes a fatal flaw." *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096-97 (9th Cir. 2017); *see also Liou v. Organifi, LLC*, 491 F.Supp.3d 740, 750 (S.D. Cal. 2020) ("In the false advertising context, an advertising claim is false if it has 'actually been disproved,' that is, if the plaintiff can point to evidence that directly conflicts with the claim." (citation and quotation omitted)). In *Kwan*, the Ninth Circuit affirmed dismissal of CLRA and UCL claims where the plaintiff failed to adequately allege specific facts establishing a dietary supplement's advertising claims were "actually false" (rather than unsubstantiated). *Id.* at 1098.

Ferguson fails to set forth facts plausibly alleging that any of the Product's advertising claims is false or misleading. Ferguson merely asserts that "none of the ingredients in Testosterone Complex, individually or in combination, safely and effectively increase testosterone levels or strength or improve sexual performance." (Compl. ¶ 5; *see also* Compl. ¶ 39.) First, neither the Product's packaging nor the online advertising alleged in the Complaint ever claims that the Product "improves" sexual performance. Instead, the advertising states "support" sexual function in men. (*Id.* ¶¶ 42, 47.) Second, the Complaint does not contain any factual content *at all* concerning whether the Product as a whole or any of its ingredients can support sexual function in men, much less any specific facts plausibly alleging actual falsity. The Complaint also does not contain any factual content at all concerning whether the Product or any of its ingredients can support physical strength.

With respect to the Product's structure/function claim "promotes an increase in free testosterone," the Complaint merely makes allegations about the "testosterone boosting" industry in general, alleging "that '[n]inety percent of 'T booster' supplements claimed to boost [testosterone],' and of these products, just '24.8% of these had data to support these claims.'" (*Id.* ¶ 16, citation omitted.) Ferguson alleges that "limited human studies have evaluated T-Boosters, resulting in no definitive findings of efficacy[.]" (*Id.* ¶ 20, quotation and citation omitted.) These allegations do nothing for Ferguson, as he does not allege at all (much less plausibly or with particularity) that the Product was one of those studied 0or whether it fell

- 14 -

MEMORANDUM OF POINTS AND AUTHORITIES

within the 24.8% that "had data to support the claims." Furthermore, whether a product has "data to support the claims" or whether there are "definitive findings of efficacy" merely concerns whether there is *substantiation*, not whether an efficacy claim is "actually false." *See Kwan*, 854 F.3d at 1098. Ferguson must plausibly allege the latter, not the former. He fails to do so, and does not even make any effort to do so.

Finally, as noted, Ferguson makes a conclusory assertion that the Product isn't safe. (Compl. ¶ 5.) This reckless assertion is made without any plausible factual allegations to support it. In *Dachauer*, the Ninth Circuit explained that a structure/function claim could be misleading if using the dietary supplement at the recommended dose increases the risk of disease. 913 F.3d at 849. "In other words, if a supplement's label recommends taking one capsule per day, and that dose actually increased the risk of death – a material fact 'with respect to consequences which may result from use of the article' – the FDA would deem it misleading not to reveal that fact on the label." *Id.*

Ferguson, however, does not allege factual content (as opposed to conclusions) plausibly showing that taking the recommended dose of the Product increases the risk of disease or death. The Complaint does not allege any testing or scientific studies which, if true, would establish that taking the Product as recommended increases the risk of disease or death. This failure "constitutes a fatal flaw." *Kwan*, 854 F.3d at 1096-97. Ferguson merely makes speculative allegations about the "testosterone booster" market generally. (Compl. ¶ 21.) He alleges that consumption of "'natural' or 'herbal' purported testosterone boosters present significant health risks." *Id.* He doubles down on that conclusory assertion with another conclusory one: "consumers risk purchasing a product that will endanger their health." *Id.* These conclusory assertions are not tied to the Product by any factual allegations. The Complaint does not contain any discussion of the Product's ingredients and its recommended dose vis-à-vis any purported risk of disease or death. Ferguson's allegations posit nothing more "than a sheer possibility that a defendant has acted unlawfully." *Iqbal*. 566 U.S. at 678. His "safety" allegations stop far short of "the line between possibility and plausibility" of entitlement to relief. *Id.*

Ferguson references a single case study of one patient who used a "natural" testosterone booster and later experienced clot formation. (Compl. ¶ 22 & n.4.) Ferguson himself admits that the case report described the "risk of venous thromboembolic events" as "*unclear* with non-FDA-approved herbal

supplements marketed as testosterone enhancers." (*Id.* ¶ 22, emphasis added.) Ferguson also provides no allegations regarding ingredient dosages contained in the unidentified herbal supplement involved in that single case report, let alone any comparisons between those unidentified doses in that unidentified product, on the one hand, and the Product at issue here, on the other. *See Magpayo v. Walmart Inc.*, No. 24-cv-01350-WHO, 2025 WL 754065, at *4 (N.D. Cal. Mar. 10, 2025) (dismissing Complaint where "plaintiff has failed to allege and cite evidence in support that taking omega-3 fish oil supplements *at the level the Products recommend* increases the risk of atrial fibrillation") (emphasis in original).

Ferguson also refers to the FDA issuing a warning in 2014 "about the significant risk of venous clots secondary to testosterone product use." (Compl. ¶ 24.) But Ferguson fails to note that the warning concerned *prescription* testosterone products, not dietary supplements (much less the Product).[2] He also fails to note that the FDA subsequently concluded: "Based on FDA's review of the results from a large clinical trial showing the use of testosterone therapy did not increase the risk of heart attack or stroke compared to an inactive treatment called a placebo, we are removing information about this risk from the *Boxed Warning* on all prescription testosterone products."[3]

The CLRA, UCL, and FAL all require not only plausible but particularized factual allegations showing that the challenged advertising is false or misleading to reasonable consumers. *See Kearns*, 567 F.3d at 1125 (Rule 9(b) applies to CLRA and UCL claims); *Loh v. Future Motion, Inc.*, No. 5:21-cv-06088-EJD, 2022 WL 2668380, at *6 (N.D. Cal. July 11, 2022) (where the plaintiff's UCL, CLRA and other claims relied on the same that the defendant misrepresented the product features, all claims were subject to Rule 9(b)). For the reasons set forth above, Ferguson has failed to adequately allege the Product's advertising is false or misleading. His CLRA, UCL, and FAL claims fail as a matter of law.

**D.    Ferguson Fails to State any Claim for Equitable Restitution Because He Fails to Plead Facts Establishing His Legal Remedies Are Inadequate.**

Ferguson fails to state a valid claim for equitable restitution. He seeks damages under his CLRA claim (Compl. ¶ 106) and equitable restitution under all his causes of action. (Compl. ¶¶ 108 (p.16[4] – UCL

---

[2] https://www.fda.gov/drugs/drug-safety-and-availability/fda-drug-safety-communication-fda-cautions-about-using-testosterone-products-low-testosterone-due
[3] *Id.*
[4] The Complaint contains a numbering error on page 16 with paragraphs 91-102 missing. Page 17 then starts with paragraph 91.

1    unlawful), 96 (UCL fraudulent), 98 (UCL unfair), 102 (FAL), 106 (CLRA).) But before he can avail

2    himself of a federal court's equitable jurisdiction, he must demonstrate that he lacks an adequate remedy

3    at law. *Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 105-06 (1945); *Sonner v. Premier Nutrition*

4    *Corp.*, 971 F.3d 834, 842-44 (9th Cir. 2020). Both Supreme Court and Ninth Circuit case law require a

5    plaintiff to plead facts establishing legal remedies are inadequate. *O'Shea v. Littleton*, 414 U.S. 488, 502

6    (1974) (holding that a complaint seeking equitable relief failed because it did not allege "the inadequacy

7    of remedies at law"); *Sonner*, 971 F.3d at 844 ("[T]he operative complaint does not allege that Sonner

8    lacks an adequate legal remedy."); *accord Gonzalez v. Chattem, Inc.*, No. 23-cv-00102-HSG, 2023 WL

9    8101923, at *9 (N.D. Cal. Nov. 21, 2023); *Freund v. HP, Inc.,* No.22-cv-03794-BLF, 2023 WL 187506,

10   at *6 (N.D. Cal. Jan. 13, 2023). To plead facts establishing inadequate legal remedies, a plaintiff must

11   make certain showings. If the allegations show that "the scope of the claim for legal damages does not

12   materially differ from that of the claim for restitution," then Ferguson has failed to carry his burden.

13   *Gradney v. Polar Beverages*, No. 25-cv-02149, 2025 WL 2105831, at *9 (N.D. Cal. July 28, 2025).

14       Here, Ferguson's equitable restitution claims must be dismissed for at least two reasons. First, his

15   boilerplate allegations about inadequate legal remedies all violate the general pleading requirement that

16   prohibits courts from accepting legal conclusions. The Court does not accept as true "legal conclusions,"

17   "labels and conclusions" or a "formulaic recitation of the elements of a cause of action[.]" *Iqbal*, 556 U.S.

18   at 678. A "naked assertion" devoid of "further factual enhancement" does not suffice. *Id.* (citation

19   omitted). His sole allegation stated in each claim is that "Plaintiff has no adequate remedy at law." *See,*

20   *e.g.* Compl. ¶ 108 (p.16). Absent any factual allegations to support this legal conclusion, the Court must

21   dismiss his claims for equitable restitution.

22       Second, the scope of Ferguson's legal claims and equitable claims cover the same conduct and are

23   based on the same theories of alleged "unlawfulness" and deception. He does not allege any facts showing

24   that the scope of the claim for legal damages differs "from that of the claim for restitution." *Gradney*,

25   2025 WL 2105831, at *9. To the contrary, he alleges the Product "had a value of $0" and he requests the

26   same amount of money as damages and restitution. (Compl. ¶ 78 & p. 19, line 28.) The Complaint fails to

27   allege "how the same amount of money for the exact same harm is inadequate or incomplete[.]" *Sonner*,

28   971 F.3d at 845.

1

**E.     Ferguson Lacks Standing to Pursue Injunctive Relief.**

2       To have standing to seek injunctive relief, the plaintiff must show he is likely to suffer future injury

3   from the defendant's conduct. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). The threatened

4   future injury "must be *certainly impending* to constitute injury in fact, and . . . allegations of possible

5   future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal citations

6   omitted) (emphasis added). This certainly impending injury must be as to the named plaintiff personally,

7   not to some other consumer or putative class member. *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d

8   1018, 1022 (9th Cir. 2003). Ferguson bears the burden to establish standing for his injunctive relief claim.

9   *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 & n.3 (2006); *Ringler*, 783 F. Supp. 3d at 1246.

10      In *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018), the court held that "[a]

11   previously deceived consumer may have standing to seek an injunction against false advertising or

12   labeling" if she can *plausibly* allege the threat of future harm. 889 F.3d at 969-70. *Davidson* involved a

13   plaintiff who purchased wipes advertised as "flushable." *Id.* at 961. The plaintiff alleged the "flushable"

14   claim was false and misleading. The court held the plaintiff could allege standing for injunctive relief

15   because when she encountered the product again, she would have no way of knowing whether the product

16   had been improved—i.e., whether the wipes were truly flushable—without purchasing and using them.

17   *Id.* at 972.

18      This case is not *Davidson*. Ferguson does not plausibly allege that he faces any "certainly

19   impending" threat of future injury. *Clapper*, 568 U.S. at 409. Ferguson alleges that the claims made on

20   the Product label "are misleading, as none of the ingredients in Testosterone Complex, either individually

21   or in combination, can increase testosterone levels or strength or improve sexual performance." (Compl.

22   ¶ 39.) As Ferguson himself alleges, these ingredients are expressly disclosed on the Product's packaging.

23   (*Id.* ¶ 42.) Unlike the plaintiff in *Davidson*, Ferguson does not need to purchase the Product and use it

24   before knowing if it provides the advertised benefits.

25      In similar circumstances, courts routinely dismiss injunctive relief claims for lack of standing. In

26   *Ringler v. J.M. Smucker Company*, 783 F. Supp.3d 1229, 1235036 (C.D. Cal. 2025), for example, the

27   plaintiff alleged that the "natural" claim on Smucker's fruit spreads was false because the products

28   contained citric acid. The court found the plaintiff had failed to allege standing to seek injunctive relief.

*Id.* at 1247-1248. "[B]y simply looking at the ingredients label, Plaintiff can uncover whether the Product contains citric acid and avoid purchasing it." *Id.* at 1247-1248. This distinguished the case from *Davidson*, where the plaintiff "had no way of determining whether future representations would be true." *Id.* at 1247. The court collected cases dismissing injunctive relief claims for lack of standing where, under the plaintiff's own theory of the alleged deception, the plaintiff could readily check the veracity of a label claim simply by looking at the information on the label. *Id.*; *see also Caldwell v. Nordic Naturals, Inc.*, 709 F. Supp. 3d 889, 911 (N.D. Cal. 2024) (distinguishing *Davidson*, finding that "the Plaintiff need not purchase the product to confirm the meaning and veracity of the label"); *see also Jackson v. General Mills, Inc.*, No. 18cv2634-LAB (BGS), 2020 WL 5106652, at *5 (S.D. Cal. Aug. 28, 2020).

Ferguson does not face any certainly impending threat of future injury He faces no uncertainty and can avoid future injury simply by looking at the Product's packaging to see if it still makes the claims that he alleges render it an unapproved drug, and to see that the ingredients have not changed. The Court must dismiss any claim for injunctive relief.

**V.     CONCLUSION**

Walgreen requests that the Court grant the Motion to Dismiss in its entirety.


Dated:  November 24, 2025                    **AMIN WASSERMAN GURNANI, LLP**


                                             **/s/ *William P. Cole***
                                             William P. Cole

                                             *Attorneys for Defendant Walgreen Co.*

**<u>CERTIFICATE OF SERVICE</u>**
(United States District Court)

I hereby certify that on the 24th day of November, 2024, I caused the electronic filing of the foregoing document**,** through the CM/ECF system. The aforementioned document will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

*/s/ **William P. Cole**<u>                      </u>*
William P. Cole